IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 19, 2011

**STATE OF TENNESSEE v. RANDY K. SANDERS**

**Direct Appeal from the Circuit Court for Williamson County**
**No. II-CR014654    Timothy Easter, Judge**

_____

**No. M2010-01627-CCA-R3-CD - Filed June 7, 2011**

_____

The defendant, Randy K. Sanders, entered a plea of guilty to driving under the influence, first offense, a Class A misdemeanor, on July 2, 2010.  The trial court sentenced him to eleven months, twenty-nine days in the county jail and suspended all but 120 days of the sentence. On appeal, the defendant argues that the trial court relied on an inappropriate enhancement factor in determining the period of confinement.  Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

Michael J. Flanagan, Nashville, Tennessee, for appellant, Randy K. Sanders.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith Devault, Assistant Attorney General; Kim R. Helper, District Attorney General; and Kelly A. Lawrence, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Background**

On January 11, 2010, a Williamson County grand jury indicted the defendant, Randy K. Sanders, for driving under the influence, first offense ("DUI first"), a Class A misdemeanor, and reckless endangerment with a deadly weapon, a Class E felony.  On July 2, 2010, the defendant pleaded guilty to DUI first in exchange for dismissal of the felony charge.  There was no sentencing agreement, and the defendant entered a stipulation that the state could prove a factual basis for the plea.  The trial court held a sentencing hearing after accepting the defendant's plea.

Corporal Mark Livengood, of the Williamson County Sheriff's Department, testified regarding his encounter with the defendant. Corporal Livengood had just completed his shift and was driving down Fairview Boulevard when he met the defendant driving in the opposite direction. The defendant was driving half-way across the yellow line and passed within a foot of Corporal Livengood's vehicle. Corporal Livengood turned around, activated his emergency equipment, and pulled the defendant over. He said that he approached the defendant and asked whether the defendant knew why he pulled him over. The defendant admitted that he had been drinking. Corporal Livengood testified that he observed that the defendant had slurred speech, and he smelled alcohol in the vehicle. Corporal Livengood said that he called the Fairview Police Department to have one of their officers assist him with the traffic stop. Corporal Livengood testified that the defendant was "very belligerent" and cursed at the Fairview officers. He described the defendant as "very impaired."

On cross-examination, Corporal Livengood clarified that the defendant became belligerent after finishing the field sobriety tests and after his arrest. He testified that while he followed behind the defendant's vehicle, he noticed the defendant traveling from the yellow to the fog line.

Officer Derrick Byrum, of the Fairview Police Department, testified that he responded to the defendant's traffic stop and conducted the field sobriety tasks. Officer Byrum testified that the defendant appeared intoxicated and admitted to having four or five drinks. Officer Byrum said that he smelled alcohol in the vehicle and noticed that the defendant had bloodshot eyes and slurred speech. He testified that the defendant was unsteady on his feet and was unable to complete the field sobriety tasks because he said he could not do the one-leg stand. Officer Byrum said that the defendant became belligerent after Officer Byrum arrested him and read the implied consent form to him. He described the defendant's impairment level as "high enough that it was not safe for him to operate a motor vehicle on that night."

The defendant testified that he was forty-nine years old and was self-employed as a broker for semi-truck tires. The defendant admitted that he was guilty of driving under the influence and explained that he drank four to five beers at a card game the night that he was arrested. He agreed that he had been convicted of driving under the influence more than ten years before the instant case. The defendant said that the vehicle he was driving when pulled over was in very poor condition and should not have been on the road. The defendant asked the court to consider imposing a sentence that would allow him to work. He said that he understood that he would lose his driver's license and would hire someone to drive when he delivered tires. He agreed to do an alcohol assessment if the court ordered one.

On cross-examination, the defendant testified that he underwent an alcohol assessment after a prior DUI conviction, and the assessor determined that he was not an alcoholic. He

agreed that he considered the condition of his vehicle to have been the reason he crossed the yellow line. He said that he used to drink too much but did not drink often any more. The defendant agreed that he had been convicted of driving on a revoked license in 2005 and 1998. The defendant denied that he was belligerent with the officers.

Upon questioning by the court, the defendant agreed that his first DUI conviction was in 1990, his second DUI conviction was in 1994, and his third DUI conviction was in 1998. He agreed that he had been dishonest with a court in the past because he pleaded guilty to the first DUI in 1990 but was not guilty because his wife was actually driving the vehicle.

In determining the defendant's sentence, the court stated that it considered the evidence presented, the arguments of counsel, the nature of the criminal conduct, and whether the defendant would be amenable to rehabilitation. The court stated that the defendant's driving record was sufficient to establish a previous history of criminal convictions or behavior, which supported sentencing beyond the minimum for the offense. The court found that confinement was necessary to avoid depreciating the seriousness of the offense and stated that the court was satisfied that on the night of his arrest, the defendant was highly intoxicated and, based on the defendant's prior DUI convictions, that the defendant was an alcoholic. The court found that measures less restrictive than confinement had been applied. The court found that the sentence imposed was the "least severe measure necessary to achieve the purposes for which this sentence is to be imposed." Ultimately, the court sentenced the defendant to eleven months, twenty-nine days, to serve 120 days in the county jail and the remainder suspended.

## Analysis

On appeal, the defendant argues that the trial court erred in ordering him to serve 120 days of his sentence in jail because the trial court relied on the court's own diagnosis of the defendant as an alcoholic, based on the defendant's driving record. The defendant submits that a diagnosis of alcoholism cannot be made based on a driving record alone. The state responds that the court was commenting on the defendant's problem with alcohol and did not make a medical diagnosis.

In misdemeanor sentencing, a separate sentencing hearing is not mandatory but the trial court is required to provide the defendant with a reasonable opportunity to be heard as to the length and manner of the sentence. Tenn. Code Ann. § 40-35-302(a). Misdemeanor sentencing is controlled by Tennessee Code Annotated § 40-35-302, which provides that the trial court shall impose a specific sentence consistent with the purposes and principles of the 1989 Criminal Sentencing Reform Act. *State v. Palmer*, 902 S.W.2d 391, 394 (Tenn. 1995). The misdemeanor offender must be sentenced to an authorized determinate sentence with a percentage of that sentence designated for eligibility for rehabilitative programs. Tenn. Code

Ann. § 40-35-302(d). Generally, a percentage of not greater than 75% of the sentence should be fixed for a misdemeanor offender; however, a DUI offender may be required to serve the full 100% of his sentence. *Palmer*, 902 S.W.2d at 393-94. In determining the percentage of the sentence, the trial court must consider enhancement and mitigating factors as well as the legislative purposes and principles related to sentencing. *Id.*

The trial court retains the authority to place the defendant on probation either immediately or after a time of periodic or continuous confinement. Tenn. Code Ann. § 40-35-302(e). We further note that the trial court has more flexibility in misdemeanor sentencing than in felony sentencing. *State v. Troutman*, 979 S.W.2d 271, 273 (Tenn. 1998). When a defendant challenges the sentence, this court conducts a *de novo* review with a presumption the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d).

The statutes in effect at the time of this offense established eleven months and twenty-nine days as the maximum sentence allowed for anyone convicted of DUI. Tenn. Code Ann. § 55-10-403(a)(1). Subsection (c) provides that DUI offenders be "required to serve the difference between the time actually served and the maximum sentence on probation." In *State v. Combs*, a panel of this court concluded that § 55-10-403(c) "in effect, mandates a maximum sentence for DUI, with the only function of the trial court being to determine what period above the minimum period of incarceration established by statute, if any, is to be suspended." *State v. Combs*, 945 S.W.2d 770, 774 (Tenn. Crim. App. 1996) .

In this case, the trial court set the defendant's period of confinement at 120 days after considering the factors set out in Tennessee Code Annotated section 40-35-103. In particular, the court found that confinement was necessary to avoid depreciating the seriousness of the offense because the defendant exhibited a high level of impairment on the night of his arrest and because the defendant's driving record indicated that the defendant had a problem with alcohol. The court used the term "alcoholic" when describing the defendant's problem, but the record indicates that the court was using the term as a layperson would, not as a medical diagnosis. The fact that the court ordered the defendant to have an alcohol and drug assessment supports the conclusion that the court did not make a medical diagnosis of alcoholism based on the defendant's driving record.

Given the flexibility traditionally granted to the trial court in misdemeanor sentencing, we find no error in requiring the defendant to serve 120 days of his sentence of eleven months, twenty-nine days. The court considered the purposes and principles of the sentencing act and found that a period of confinement greater than the minimum required by statute was necessary (1) to avoid depreciating the seriousness of the offense, (2) because measures less restrictive than confinement had been unsuccessfully applied, and (3) because of the defendant's criminal history and behavior, which included three prior convictions for

DUI and several driving on a revoked license convictions. We conclude that the trial court did not err in its sentencing; therefore, the defendant is without relief in this matter.

## Conclusion

Based on the foregoing reasons, we affirm the judgment of the trial court.

_____
J.C. McLIN, JUDGE